UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| EVAN ROLLINS | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:21-CV-767 RLM-MGG |
| | ) | |
| WILLIAM HYATTE and | ) | |
| GEORGE PAYNE, JR., | ) | |
| | ) | |
| *Defendants* | ) | |

## OPINION AND ORDER

Evan Rollins has sued Warden William Hyatte and Deputy Warden George Payne, Jr., in their individual capacities, alleging that they subjected him to unconstitutional conditions of confinement while he was imprisoned at Miami Correctional Facility. Mr. Rollins sued from prison, so the Prison Litigation Reform Act's requirement that he exhaust all administrative remedies before suing over prison conditions applies. *See* 42 U.S.C. § 1997e(a). The defendants have moved for summary judgment, and Mr. Rollins has cross-moved for summary judgment, on the issue of exhaustion of administrative remedies. Mr. Rollins requests oral argument to present legal arguments but not additional evidence. Neither party requested a Pavey hearing. *See* Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008).

For reasons explained in this opinion and order, the court DENIES the defendants' motion for summary judgment [Doc. 15], GRANTS Mr. Rollins's

motion for summary judgment, [Doc. 31], and DENIES AS MOOT Mr. Rollins's request for oral argument. [Doc. 47].[1]


## LEGAL STANDARD

Federal Rule of Civil Procedure 56 entitles a party to summary judgment when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court construes all facts and reasonable inferences in the non-moving party's favor. Id. A court considering cross-motions for summary judgment "constru[es] all facts and draw[s] all reasonable inferences in favor of the party against whom the motion under consideration was filed." Hess v. Bd. of Trs. of S. Ill. Univ., 839 F.3d 668, 673 (7th Cir. 2016) (citation omitted). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires

---

[1]    Mr. Rollins's action was consolidated for pretrial, non-dispositive matters with several other cases with similar allegations against the same defendants, [Doc. 11], and he requests consolidated oral argument. [Doc. 47]. The exhaustion defense is a dispositive matter, so the court resolves the issue in separate orders.

trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* Fed. R. Civ. P. 56(e)(2).

A defendant isn't entitled to a jury trial on contested issues involving exhaustion. Wagoner v. Lemmon, 778 F.3d 586, 590 (7th Cir. 2015) (discussing Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008)). A court holds a Pavey hearing to resolve issues of fact bearing on exhaustion, but "[w]hen there are no disputed facts regarding exhaustion, only a legal question, the court may resolve the issue without a hearing. Vela v. Ind. Dep't of Corr., No. 3:16 CV 51, 2017 U.S. Dist. LEXIS 9279, at *2 (N.D. Ind. Jan. 24, 2017).

## BACKGROUND

Evan Rollins alleges that Warden Hyatte and Deputy Warden Payne violated his constitutional rights when they kept him in a restrictive housing unit cell at Miami Correctional Facility, starting in November 2020. He alleges that his cell had broken lights and a window covered with sheet metal, so was extremely dark, and that he was allowed to leave the cell for only five hours per week. He claims that the extreme darkness caused several injuries, both physical and psychological. He claims this treatment violated his Eighth Amendment right to be free from cruel and unusual punishment and seeks to hold Warden Hyatte and Deputy Warden Payne accountable by way of 42 U.S.C. § 1983.

Mr. Rollins sued from prison, so the defendants aren't liable if they can show that Mr. Rollins didn't exhaust administrative remedies available to him. *See* 42 U.S.C. § 1997e(a).

*Miami Correctional Facility's Administrative Remedies*

Miami Correctional Facility receives and manages prison grievances according to the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, effective since September 1, 2020. In broad strokes, the policy requires that a prisoner complete a formal grievance and two appeals to exhaust a claim. The parties agree that the written policy is as follows.

A prisoner can complain about prison conditions by filing a grievance with the prison. The prison considers only certain issues appropriate for the grievance process, like staff treatment, medical or mental health, acts of reprisal, and other concerns about conditions of care and supervision in prison. A prisoner starts by completing a grievance on State Form 45471, to be completed no later than ten business days from the date of the incident giving rise to the complaint. An offender grievance specialist is to review any grievance within five business days of receiving the grievance. A specialist either rejects the grievance or accepts and records it. A grievance specialist can reject a grievance if it is untimely, relates to more than one event or issue, is illegible, and the like. A rejected grievance is returned to the prisoner with State Form 45475, "Return of Grievance." It is not appealable, but a prisoner can submit a revised State Form 45475 within five business days of when the grievance is returned.

If a grievance specialist accepts the grievance, the grievance is logged into the prison's computer system and filed with any other grievances filed by that

4

same prisoner. The grievance is marked on the prisoner's log with "I – Formal Grievance." The grievance specialist has fifteen business days to investigate and give a response.

A prisoner who is dissatisfied with the prison's response can appeal the response with State Form 45473. Any appeal is due within five business days of the date of the grievance response. A prisoner can also appeal a grievance if there's no response within twenty business days of when the grievance specialist received the response. An offender grievance specialist is to log the date of receipt of the appeal and forward the appeal to the warden. The warden or his designee is to review the appeal within ten business days of receiving the appeal, and the offender grievance specialist is to give a copy of the appeal response to the prisoner.

A prisoner dissatisfied with the warden's decision can lodge an appeal with the Indiana Department of Correction. The prisoner must check the "disagree" box on the warden or his designee's response and submit the response with the completed State Form 45473 and any supporting documentation. This appeal must be made to the offender grievance specialist within five business days of the warden or his designee's appeal response. A prisoner can also appeal if there's no response within ten business days of when the warden received the first-level appeal. The offender grievance specialist is to document the appeal in the grievance database, logging the prisoner's grievance history with "II – Formal Appeal." An appeal of the warden's decision is reviewed by the Department Offender Grievance Manager and is considered final.

The parties disagree over how this policy was implemented and how Mr. Rollins used the grievance process.

*Warden Hyatte and Deputy Warden Payne's Account*

Warden Hyatte and Deputy Warden Payne assert that Mr. Rollins filed a grievance but didn't exhaust the appeals process. Their evidence includes the Indiana Department of Correction's Offender Grievance Process, Policy and Administrative Procedure 00-02-301, [Doc. 16-2], Mr. Rollins's grievance history, [Doc. 16-3], and a declaration of Angela Heishman, a grievance specialist supervisor at Miami Correctional Facility. [Doc. 16-1].

Ms. Heishman oversees the grievance process at Miami Correctional and reviewed documents that would relate to Mr. Rollins's grievance history. She attests to the grievance process just described and then attests to what she knows about Mr. Rollins's grievance. She says that her office received Mr. Rollins's formal grievance on June 15, 2021. The grievance was dated May 20, 2021, and in the grievance, Mr. Rollins said, "I am in a cell with a metal sheet covering my window which is affecting my mental health." [Doc. 16-1 at 6]. The grievance specialist who reviewed the grievance responded that the issue had been resolved; Lt. N. Smith looked into the matter and stated, "Maintenance Williams and I went to look at his cell and he stated he will replace [his] back window with glass tomorrow (6/16/21). This should resolve your grievance." [Doc. 16-3 at 7]. The formal grievance was logged as case ID number 128692. Indiana Department of Correction records don't show any appeal of the denial.

Ms. Heishman asserts that "[i]f Offender Rollins had submitted a formal grievance appeal of any kind, the Warden and/or Central Office would have received it and responded to it, in accordance with procedure." [Doc. 16-1 at 7].

Mr. Rollins's grievance history shows that the offender grievance specialists received grievance number 128692 on June 15, 2021, and that it was marked as "I - Formal Grievance." [Doc. 16-3 at 1–2]. It also shows that Mr. Rollins successfully filed several other grievances throughout the years.

*Mr. Rollins's Account*

Mr. Rollins asserts that he exhausted all administrative remedies available to him. His evidence includes his own declaration, [Doc. 33-7 at 109–112], the deposition transcript of Michael Gapski, a grievance specialist at Miami Correctional Facility and Rule 30(b)(6) representative for the prison, [Doc. 26-1], the deposition transcript of Charlene A. Burkett, the Director of the Indiana Department of Correction Ombudsman Bureau, [Doc. 29-2 to 29-5], and the deposition transcript of Stacy Hall, a correctional officer and law librarian at Miami Correctional Facility, [Doc. 29-6].

According to Mr. Rollins's declaration, he was placed in restrictive housing in November 2020. He had no working light and metal obstructed his window. He gave a grievance to a correctional officer, and he claims that was the only way he could send a grievance from restrictive housing. He never received a response, so he sent another grievance around December 17, 2020. That same month, he asked a correctional officer, Ms. Koontz, what a prisoner is to do when there is

7

no response. Ms. Koontz told Mr. Rollins to wait for a reply and that he couldn't make any appeal without getting the appeal form from the grievance personnel. She told him that the grievance personnel had thirty days to respond. Mr. Rollins didn't know and was never told that if he didn't receive a response, he could appeal the grievance as if it had been denied, contrary to what Ms. Koontz told him. Mr. Rollins never received a response to his December 17 grievance.

Mr. Rollins later filed a grievance about his cell conditions on April 24, 2021, his late mother's birthday. He never received a response, so filed another grievance on May 20. With the May 20 grievance, Mr. Rollins noted that he had already submitted several grievances about his cell conditions. The May 20 grievance was marked as grievance number 128692. The grievance was returned to Mr. Rollins on June 15, 2021, and he marked "disagree" on the grievance, put the grievance in an envelope addressed to the grievance specialist, and gave the envelope to a correctional officer. He never received a response.

Between his first appeal in the fall of 2020 and June 21, Mr. Rollins says he submitted fifteen to twenty request-for-interview forms to the grievance specialist, Warden Hyatte, and Deputy Warden Payne, seeking information about his grievances. He never received any information about his grievances.

Mr. Rollins presents Mr. Gapski's testimony as evidence that Miami Correctional Facility didn't follow department policy and made the grievance process impossible. Mr. Gapski, a grievance specialist at Miami Correctional Facility, testified as Miami Correctional Facility's Rule 30(b)(6) representative and described how grievance specialists at Miami Correctional Facility handled

8

the grievance process. He explained that in restrictive housing, like Mr. Rollins's unit, a prisoner wishing to file a grievance would complete a grievance form, hand it to a correctional officer, and the correctional officer would put the grievance in prison intraoffice mail to be delivered to the grievance specialists. No grievance is logged until a grievance specialist receives the grievance, and grievance specialists have no way of knowing whether or when a correctional officer accepted a prisoner's grievance, which correctional officer accepted a grievance, or what happened to a grievance that was sent but never received.

Mr. Gapski also described how Miami Correctional Facility handles appeals. The Indiana Department of Correction policy says a prisoner can appeal the prison's response to a grievance. A prisoner can appeal the prison's response or "may appeal as though the grievance had been denied" if there's no response within twenty business days of the offender grievance specialist's receipt of the grievance. [Doc. 16-2 at 12]. The policy adds that a prisoner who wishes to file a first-level appeal must complete State Form 45473 and submit it within five business days of the date of the grievance response.

Mr. Gapski explained things differently, explaining an extra unofficial step at Miami Correctional Facility. He said that the prison responds to grievances with an Offender Grievance Response Report. That report explains the prison's response and has a spot to mark "agree" or "disagree." It isn't State Form 45473, which the written policy requires for starting an appeal. If a prisoner wants State Form 45473, he marks "disagree" on the Offender Grievance Response Report and sends it to the grievance specialists. When a grievance specialist receives

9

the report marked "disagree," the specialist sends a copy of State Form 45473 to the prisoner. That copy comes from a grievance specialist and must include the original grievance number on it. [Doc. 29-1 at 46–47]. The grievance specialists forward an appeal to the warden and send a receipt to the prisoner only once the specialists have received a completed State Form 45473.

Mr. Gapski also spoke of how timing is calculated. The grievance policy requires that a prisoner "submit a completed State Form 45471, 'Offender Grievance,' no later than ten (10) business days from the date of the incident given rise to the complaint." [Doc. 16-2 at 9]. The same is true for appeals, except that a prisoner has five business days instead of ten. [Doc. 16-2 at 14]. Mr. Gapski attested that grievance specialists calculate timing based on when they receive an appeal. So an appeal is deemed untimely if not *received* within five business days. Timing doesn't depend on when a prisoner signed an appeal or handed an appeal to a correctional officer, even though prisoners often can't give an appeal directly to a grievance specialist.[2]

Mr. Rollins also presents deposition testimony of Charlene Burkett, the Director of the Department of Correction Ombudsman Bureau. The Ombudsman Bureau handles prison complaints independently of the Department of Correction and Indiana Department of Administration but doesn't have enforcement power. The Ombudsman Bureau received several complaints from

---

[2]     The defendants contend that Mr. Gapski's testimony about timing was only about appeals and not first-level grievances, so Mr. Gapski's testimony can't be used to generalize about how first-level appeals are handled. [Doc. 41 at 11].

plaintiffs in the consolidated cases, each claiming that Miami Correctional Facility didn't respond to their grievances.

Likewise, Officer Stacy Hall, who was a law librarian in May or June 2021, attested that thirty to forty prisoners complained to her that their grievances didn't receive responses.

DISCUSSION

Mr. Rollins and the defendants move for summary judgment on the exhaustion defense. The Prison Litigation Reform Act limits prisoner's ability to sue over prison conditions: "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Act's purpose is to reduce the number and improve the quality of prisoner suits, Woodford v. Ngo, 548 U.S. 81, 94 (2006), and the administrative exhaustion requirement achieves that purpose by "permit[ting] the prison's administrative process to run its course before litigation begins." Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) (per curiam). Requiring administrative exhaustion might let the prison respond to the grievance in a manner acceptable to the prisoner, avoiding litigation altogether. Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006).

The Act's exhaustion requirement demands strict compliance. Id. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286

11

F.3d 1022, 1025 (7th Cir. 2002). Yet a prisoner need only exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a); a prisoner "need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016).

Administrative remedies are unavailable despite their availability on paper in three sorts of circumstances. Id. at 643. First, administrative remedies are unavailable when their procedures operate as a dead end, be that because prison officials are unwilling or unable to provide relief. Id. Second, administrative remedies are unavailable when their procedures are so "opaque" and difficult to understand or navigate that they're practically of no use. Id. at 643–644. Third and finally, administrative remedies are unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

The PLRA's administrative exhaustion requirement is an affirmative defense belonging to a defendant. Jones v. Bock, 549 U.S. 199, 216 (2007). A defendant invoking the defense must prove that "an administrative remedy was available and that [the plaintiff] failed to pursue it." Thomas v. Reese, 787 F.3d 845, 847 (7th Cir. 2015). Whether a plaintiff exhausted administrative remedies is decided by a judge rather than a jury. Pavey v. Conley, 544 F.3d 739, 741 (7th Cir. 2008).

Warden Hyatte and Deputy Warden Payne's legal argument is straightforward: the prison's policies plainly require two levels of appeal for administrative remedies to be exhausted. Their records don't show that Mr.

Rollins's successfully appealed any grievances, so he must not have exhausted administrative remedies.

Mr. Rollins's argument is similarly straightforward: the prison didn't respond to grievances or appeals and didn't have any process to appeal non-responses, so administrative remedies weren't available.

Approaching from Mr. Rollins's perspective makes for a clearer picture.

Mr. Rollins points to his actions and Miami Correctional Facility's inaction and silence to show that he exhausted available remedies. His declaration describes grievances that he sent in December 2020 and again in April and May 2021, and an appeal in June 2021. He received a response to the May 2021 grievance but to no others. When he appealed that grievance in June, he never received a response. The declaration says Mr. Rollins requested interviews fifteen to twenty times between December and May so that he could seek information about his grievances. Mr. Rollins emphasizes his point with Mr. Gapski's testimony that since January 1, 2020, the prison accepted not a single appeal that a prisoner submitted for a non-response.

According to Mr. Rollins, this evidence shows that administrative remedies weren't available because the prison didn't respond to his grievances or appeals. He says that prison officials' consistent failure to respond meant that the process wasn't available. *See* Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002).

This argument appears to hit a snag with the grievance policy. A prisoner must follow any prison rules that require administrative appeals, id. (citing Pozo v. McCaughtry, 286 F.3d 1022, 1025 (2002)), and Miami Correctional Facility's

policy required appeals of non-responses. According to policy, a grievance specialists had to respond to a grievance within fifteen business days. If a prisoner didn't receive a response within twenty business days of when the grievance specialists received a grievance, a prisoner was to appeal as if a response had come. The warden was to respond to an appeal within ten business days of receiving the appeal. If he didn't respond by then, a prisoner could appeal as if a response had come. So, Mr. Rollins would exhaust administrative remedies according to the policy only if he appealed the lack of a response to a grievance and appealed the lack of a response to his appeal.

This appeals process makes little sense. The policy requires that a prisoner who doesn't get a response to a grievance file an appeal, but a prisoner can file an appeal only by filing State Form 45473. Mr. Gapski describes an unauthorized step requiring a prisoner to first mark another form with "disagree" before receiving State Form 45473. But a prisoner can't mark "disagree" on a form he never receives. This is a dead end.

The defendants insist that Miami Correctional Facility recognizes only the official policy, contrary to what Mr. Gapski says. But even if the prison follows the written policy to a tee, appeals are unavailable for non-responses. The policy tells prisoners to appeal as if the grievance had been denied but doesn't say how a prisoner is to get a copy of State Form 45473,[3] much less how a prisoner in restrictive housing, like Mr. Rollins was, is to get ahold of State Form 45473.

---

[3]   Mr. Rollins asserts that the only way a prisoner gets State Form 45473 is to receive one from a grievance specialist after completing the unofficial and unauthorized step. The defendants object to this assertion as not supported by

The same deficiencies apply to the second-level appeal. Policy dictates that a prisoner starts a second-level appeal by marking the warden's first-level response with "disagree." The defendants and the policy don't explain how a prisoner who receives no response to the first-level appeal can mark "disagree" on a form that they don't have and that might not even exist.

Mr. Rollins bolsters his case with Ms. Koontz's statement. He says that her misdirection — telling him that he had to wait for a response to a grievance to file an appeal and that the grievance specialist had thirty days, not twenty, to respond — shows that prison staff prevented him from using the administrative process. *See* <u>Kaba v. Stepp</u>, 458 F.3d 678, 684 (7th Cir. 2006) ("[W]hen prison officials prevent inmates from using the administrative process . . . the process that exists on paper becomes unavailable in reality.").

If Mr. Rollins is believed, he has exhausted *available* remedies. Mr. Rollins could appeal the prison's lack of response after the prison's time to respond lapsed, but that appeal was made impossible because Miami Correctional Facility required State Form 45473 to appeal. It provided State Form 45473 form only after a prisoner completed the unauthorized intermediate step involving the Offender Grievance Response Report. If the defendants are right and they followed the policy word for word, they still don't explain gaps in the policy that don't account for non-responses. Nothing in the written grievance policy tells a

---

Mr. Gapski's testimony — he said that State Form 45473 comes from him but didn't exactly say that there was no other way to get the form. [Doc. 29-1 at 47]. Still, the defendants never explain how a prisoner who doesn't receive a response can get State Form 45473, nor does the written policy address this crucial step.

prisoner how to appeal if he never receives a response or State Form 45473. Ultimately, the policy's rules about appeals are "based on the assumption that the prisoner has received a response to his original grievance," and doesn't account for non-responses. Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *8–9 (S.D. Ind. Jan. 10, 2011). This policy gap means "there is no adequate appeals process," so Mr. Rollins "cannot be faulted for failing to appeal." Id. (citing Dole v. Chandler, 438 F.3d 804, 809–810 (7th Cir. 2006)).[4]

The defendants try to undermine Mr. Rollins's evidence. First, they impugn Mr. Rollins's declaration as "not subjected to cross examination." [Doc. 42 at 6]. This argument doesn't persuade. The defendants cite no authority for disposing of summary-judgment declarations because the declarant wasn't cross-examined. The defendants could have tried to depose Mr. Rollins if they thought cross-examination were crucial.

Next, they characterize the declaration as self-serving and insist that it is therefore of no use at summary judgment unless unaccompanied by other evidence. [Doc. 41 at 32–33]. (citing Buie v. Quad/Graphics, Inc., 366 F.3d 496, 504 (7th Cir. 2004)). The rule that a self-serving declaration or affidavit alone can't defeat summary judgment has been bad law for a decade in this circuit. Hill v. Tangherlini, 724 F.3d 965, 967–968 (7th Cir. 2013) ("[T]he term 'self-

---

[4]     Another gap in the policy involves timing. Mr. Rollins had to appeal a non-response within twenty business days of when grievances specialists received a grievance or ten business days of when the warden received an appeal. Timing didn't depend on when Mr. Rollins signed or sent a grievance or appeal, and he had no way of knowing when someone else received his grievance or appeal. A prisoner who doesn't receive a response is apparently left to speculate about when an appeal of a non-response is due.

serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). The court of appeals expressly overruled a litany of its cases "to the extent that they suggest a party may not rely on 'self-serving' evidence to create a material factual dispute." Id. at 967 n.1. The self-serving nature of Mr. Rollins's declaration isn't reason to discard it.

The defendants' next line of attack is the declaration's level of detail. Mr. Rollins says in his declaration that he gave a grievance to a correctional officer in December 2020 and that he submitted another grievance on or around December 17, 2020, after receiving no response. The defendants argue that this is too vague because he doesn't identify the officer who took his grievance and doesn't specify the date. Mr. Rollins says he submitted a grievance in April about the conditions of his cell. The defendants argue this is too vague because the declaration doesn't say which conditions of the cell are being grieved. Mr. Rollins says that he later marked a returned grievance with "disagree" and handed the putative appeal to a correctional officer on June 15, 2021. The defendants acknowledge that this assertion is more specific as to the date, but argue that without the correctional officer's name, "Plaintiff's assertion remains vague at best." [Doc. 42 at 10].

None of these objections is persuasive. The identity of the correctional officers who took the grievance or appeal isn't material to the factual assertion made — that Mr. Rollins filed a grievance or appeal. Nor is the timing of the December grievance — sometime between December 1 and December 17, 2023

— too vague. Mr. Rollins's assertion that a grievance was about his cell's conditions could be more specific, but context makes clear that he was grieving the light conditions in the cell.

The defendants argue that Mr. Rollins's assertion about what Ms. Koontz said is inadmissible hearsay. *See* Gunville v. Walker, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely on inadmissible hearsay to oppose motion for summary judgment."). Hearsay is an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). Mr. Rollins explains that the doesn't offer what Ms. Koontz's said for its truth — he offers it to show Miami Correctional Facility's response to his grievances. Put differently, it's offered for the effect on Mr. Rollins, the listener, so it isn't hearsay. *See* United States v. Graham, 47 F.4th 561, 567 (7th Cir. 2022). Offering the statement for its truth would be an odd tactic for Mr. Rollins when he's trying to show that prison officials misled him. The objection is overruled.

After their evidentiary objections, the defendants argue that Mr. Rollins's arguments are legally deficient.

First, the defendants argue that some relief was available. They cite Mr. Rollins's grievance log as evidence that other grievances were logged. They cite the grievance log to show that Mr. Rollins's May grievance received a response. The grievance log says as to the May grievance, "While looking into this matter, Lt. N. Smith was contacted. She stated, 'Maintenance Williams and I went to look at his cell and he stated he will replace [his] back window with glass tomorrow (6/16/21). This should resolve your grievance." [Doc. 16-3 at 7]. They argue that

18

Mr. Rollins received some relief, so he can't claim that administrative remedies were unavailable.

That the prison logged some of Mr. Rollins's other grievances shows that the administrative remedy process worked some of the time. It doesn't show that administrative remedies were available for these grievances. And that Mr. Rollins's May grievance received a response doesn't contradict his claim or evidence about his attempted appeal. He doesn't contest that his May grievance was logged by the prison. He contests that the appeals process was available because he never received a response to his appeal. Whether and how Lt. Smith responded sheds no light on the availability of appeals.

Second, the defendants argue that the grievance process wasn't onerous. *See* Ross v. Blake, 578 U.S. 632, 643 (2016) ("[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use."). The policy manual requires that prisoners be advised of the grievance policy during admission and orientation. Ms. Heishman attested that admission and orientation includes written information about the grievance process for prisoners. This evidence, the defendants argue, defeats any claim that the prison didn't give Mr. Rollins information about the grievance process because there's no evidence that the prison didn't follow these procedures. They add that Mr. Rollins's grievance log includes several grievances and other plaintiffs in the consolidated cases successfully exhausted administrative remedies, so the administrative process mustn't be so opaque as to be unavailable.

19

This argument contradicts Mr. Rollins's statement that he was never told that he could appeal a non-response after the time to respond passed. That contradiction doesn't create a genuine dispute over availability of remedies. Mr. Rollins argues — and supports with evidence — that his own grievances about housing conditions in his cell went unanswered for months and that Ms. Koontz misled him about the administrative process. That the prison's policy is to inform incoming prisoners about what the process should be and that other grievances made it through the administrative process, when taken as true, doesn't contradict Mr. Rollins's evidence that his grievances hit a dead end or that Ms. Koontz told him incorrect information.

Third, the defendants argue that Mr. Rollins wasn't hindered from exhausting the administrative process. An administrative remedy isn't available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross v. Blake, 578 U.S. at 644. The defendants argue that evidence of Ms. Koontz misleading Mr. Rollins and evidence of prison guards taking Mr. Rollins's grievances, only for the grievances never to be filed, is too vague. This argument is unpersuasive for reasons already explained. Moreover, even if Ms. Koontz didn't mislead Mr. Rollins, he'd have still hit a dead end when the prison didn't respond to his grievances and offered an ineffective appeal process.

The defendants' reasons to reject Mr. Rollins's evidence and arguments are unpersuasive, so Mr. Rollins has created a genuine dispute of fact as to exhaustion. Mr. Rollins is entitled to judgment on the affirmative defense unless

the defendants can somehow prove they're nevertheless entitled to judgment or can show that there's a genuine dispute of material fact requiring a <u>Pavey</u> hearing. *See* <u>Pavey v. Conley</u>, 544 F.3d 739 (7th Cir. 2008).

Warden Hyatte and Deputy Warden Payne argue that they're entitled to summary judgment because they have no institutional records of Mr. Rollins's grievances and appeals about housing conditions. If there are no records of grievances or appeals, he must not have exhausted administrative remedies.

The defendants rely on Ms. Heishman's declaration. She attests that "[the Indiana Department of Correction] recognizes only one grievance process. The grievance process described in Policy and Administrative Procedure 00-02-301 is the only administrative remedy officially recognized by the Department for resolution of offender's [sic] grievance issues." [Doc. 16-1 at 3]. She then says that "IDOC Maintains internal records for every formal grievance and formal appeal initiated by an offender," and that "[i]f [Mr.] Rollins had submitted a formal grievance appeal of any kind, the Warden and/or Central Office would have received it and responded to it, in accordance with procedure." [Doc. 16-1 at 6, 7].

The defendants also rely on Mr. Rollins's grievance log. The log recorded several of Mr. Rollins's grievances, but not the grievances Mr. Rollins swears he submitted.

These facts, taken as true, don't create a genuine issue of material fact. Ms. Heishman insists that the prison only recognizes the official policy. The prison can officially recognize one policy while staff follow unauthorized

processes, which is what Mr. Gapski testified to. Her assertion doesn't controvert that prisoners must complete an Offender Grievance Response Report to get State Form 45473, which is required for appeals. Then Ms. Heishman insists that the warden or central office would have received and responded to any appeal Mr. Rollins submitted. This assumes no roadblocks between Mr. Rollins sending an appeal and the warden or central office receiving the appeal. As explained before, Mr. Gapski's testimony shows: that Mr. Rollins had to rely on correctional officers to deliver grievances and appeals; that there was no way for Mr. Rollins or grievance specialists to track a grievance before it got to the grievance specialists; that submitting an appeal required completing the unauthorized Offender Grievance Response Report; and that Mr. Rollins couldn't appeal non-responses because without a response, he didn't have the required State Form 45473. If Ms. Heishman is right, then the warden and central office do respond to all appeals that they receive. Yet her declaration doesn't create a genuine issue about whether the steps leading up to the warden or central office's receipt of an appeal were available to Mr. Rollins.

Nor does Mr. Rollins's grievance history controvert Mr. Rollins's evidence that administrative remedies were unavailable. That Mr. Rollins successfully submitted grievances at other times doesn't controvert that he didn't have available administrative remedies while in restrictive housing. On the contrary, the lack of records could be consistent with his version of events. As Judge Barker, in a similar case, explained:

> Although there is no record of any of these grievances in the prison
> database, that record is obviously only accurate as to the grievances

> that are actually inputted into the system by prison officials. In other words, even if a prisoner properly submits a grievance to an appropriate prison official, if the prison grievance specialist does not receive it, either because it is lost or forgotten, or if the grievance specialist fails for some other reason to input the grievance into the system, there would be no record of it having been filed.

Knighten v. Mitcheff, No. 1:09-cv-333, 2011 U.S. Dist. LEXIS 2910, at *6–7 (S.D. Ind. Jan. 10, 2011). The defendants' evidence shows that Mr. Rollins's grievances didn't get logged. That's entirely consistent with Mr. Rollins's evidence and the policy of logging grievances only once they're received.

The defendants suggest that allowing Mr. Rollins to prove exhaustion with his declaration would undermine the purpose of the Prison Litigation Reform Act by making the exhaustion defense meaningless. They say that "any plaintiff could succeed on a claim alleging they exhausted administrative remedies simply by demonstrating that there is no record of any grievance submitted." [Doc. 42 at 7].

First, Mr. Rollins presented other evidence that remedies were unavailable, so he didn't rest merely on the lack of records.

Second and more fundamentally, a prisoner's word might be all that he has. If a prison loses grievances before they're filed, a plaintiff often has only the lack of records and his own word to show exhaustion of remedies. As Judge D'Agostino observed, "it is unclear what evidence Defendants expect Plaintiff to produce of his grievances that were allegedly discarded by corrections officers." Reid v. Marzano, No. 9:15-CV-761, 2017 U.S. Dist. LEXIS 38547, at *10 (N.D.N.Y. Mar. 17, 2017). Judge D'Agostino noted that a prisoner would ideally keep photocopies for his records, but that doing so was unrealistic because the

plaintiff didn't have access to the law library. Id. The same is true for Mr. Rollins, even if he doesn't specifically allege that correctional officers discarded his grievances; he was in restrictive housing so it's unclear how he could have kept records for himself. And worse yet, taking the defendants' argument to its logical conclusion cuts against their own argument. Accepting that a prisoner can't rely on the lack of evidence of grievances would incentivize prisons to destroy or lose all grievances and prohibit prisoners from keeping copies of their grievances. A plaintiff would only have his word and the defendants could always reply, "our lack of records and your word aren't enough." The defendants warn against making the defense meaningless, but their position could lead to a perversely impenetrable defense.

In summary, the defendants' argument that the absence of evidence is the evidence of absence doesn't contradict Mr. Rollins's evidence that administrative remedies weren't available. The defendants' evidence is consistent with Mr. Rollins's claims, so doesn't create a genuine issue as to whether administrative remedies were available to Mr. Rollins. Administrative remedies weren't available to Mr. Rollins, so he satisfied 42 U.S.C. § 1997e(a) before suing.

A court normally holds a Pavey hearing to resolve factual disputes bearing on administrative exhaustion, but needn't hold a hearing if it can resolve the issue of exhaustion on the documentary evidence. Bessler v. Wexford of Ind. LLC, No. 3:21-CV-691, 2022 U.S. Dist. LEXIS 199409, at *7–8 (N.D. Ind. Nov. 2, 2022). Neither party requested a Pavey hearing and the consistency between Mr. Rollins's claim of exhaustion and the defendants' evidence means there's no

genuine issue of material fact. Accordingly, the court denies the defendants' motion for summary judgment and grants Mr. Rollins's motion for summary judgment without a <u>Pavey</u> hearing.

Mr. Rollins requested oral argument to help the court narrow its focus on the voluminous records and briefs across the consolidated cases. Oral argument is unnecessary, so the court denies the request for oral argument.

CONCLUSION

For these reasons, the court DENIES the defendants' motion for summary judgment; GRANTS Mr. Rollins's motion for summary judgment; REJECTS the exhaustion defense; and DENIES AS MOOT Mr. Rollins's motion for consolidated oral argument.

SO ORDERED.

ENTERED:   August 15, 2023

_____/s/ Robert L. Miller, Jr._
Judge, United States District Court